GEDANKE, Respondent, vs. WISCONSIN EVAPORATED MILK COMPANY, Appellant.

*April 5—May 1, 1934.*

*H. A. Schmidt* of Lake Mills, for the appellant:

For the respondent there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Lynn H. Smith.*

FAIRCHILD, J. The contract in this case is taken out of the statute of frauds and made valid by the delivery by one party and the acceptance by the other of a portion of the goods contracted for.

The contract provided for the sale and delivery of goods in certain quantities at times to be specified. They were to be separately paid for. After the delivery of two hun-

dred pounds of butter, a difference arose between the parties as to whether the buyer had paid the agreed price or one dollar less. The matter was disposed of by the respondent giving his check for $44. The appellant, although not entirely satisfied, accepted the amount and considered the butter paid for. But appellant now insists that the failure of the respondent to pay what appellant claims to have been the full price for the butter warranted the latter's refusal to continue with its part of the contract.

Appellant's position, if it is to be justified at all, must be justified either on the ground that it had an unpaid seller's lien on the goods still undelivered, or on the ground that respondent's breach or default was sufficient to justify appellant's rescission and cancellation of the remaining unperformed portion of the contract. Sec. 121.52 (1), Stats., provides in part as follows:

"The seller of goods is deemed to be an unpaid seller within the meaning of this act:

"(a) When the whole of the price has not been paid or tendered. . . ."

Appellant strongly contends that its action was in effect an exercise of its right to an unpaid seller's lien. The contention is unsupported by the facts of the case. Appellant did not take the position that it was holding the goods as security until respondent paid the disputed one dollar. It did not treat the goods as property of the respondent upon which it had a seller's lien and which it would surrender to respondent upon the payment of the additional dollar. Its position is stated in its letter of February 1, 1933, to respondent's attorney. The letter reads:

"We had an agreement with the Fort Fruit Market as well as the Watertown Fruit Market on some milk and butter. We delivered the butter as per agreement to the Fort people and in remitting they took the stand that they could settle any way they wanted to. . . . We took the check and passed it through the bank, and considered the butter

paid for, but also considered the milk order canceled and have no intention of sending over any milk to them."

The appellant's stand is clear. Whether it might have been within its rights in exercising a seller's lien is immaterial. The fact is that it did not do so. What it attempted to do was to rescind the balance of the contract. Under certain circumstances, an unpaid seller has a right of rescission. Sec. 121.61 (1), Stats., provides:

"An unpaid seller having a right of lien or having stopped the goods *in transitu,* may rescind the transfer of title and resume the property in the goods, where he expressly reserved the right to do so in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time. The seller shall not thereafter be liable to the buyer upon the contract to sell or the sale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale."

Even if appellant be considered an unpaid seller having a right of lien, it has exceeded its rights in attempting to rescind under circumstances which are clearly not covered by the statute. The statute allows rescission under two situations: First, where the right to rescind upon default of the buyer has been expressly reserved, and second, where the buyer has been in default an unreasonable time. Neither of these situations existed here, because appellant's actions were such, and the circumstances surrounding the case were such, as to place appellant outside the laws which affect the rights and remedies of an unpaid seller.

There still remains the question of whether the action of the respondent constituted such default or substantial breach as to justify rescission by the appellant entirely apart from any status as an unpaid seller. Sec. 121.45 (2), Stats., provides:

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or

more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

In the present case there arose a dispute, both sides apparently acting in good faith, as to the market price of butter on a particular day. The respondent deducted, unjustifiably according to appellant's contention, one dollar from a bill of $45. Appellant used this as an excuse for not performing the balance of the contract involving goods valued thereunder at $183. The question before the court is whether this deduction by respondent was a sufficient default to justify rescission by appellant.

As a general rule, rescission of a contract is not permitted for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract. 1 Black, Rescission and Cancellation (2d ed.), p. 550, § 197; *Selby v. Hutchinson*, 4 Gilm. (9 Ill.) 319.

In the case of instalment contracts, the majority rule in the United States, although England and several jurisdictions in this country have adopted a much less strict standard, is that failure to pay for one instalment by the buyer excuses the seller from delivering the rest; and this is generally so held without regard to the reason for the buyer's failure. 2 Williston, Contracts, p. 1662, § 867. The reasoning back of this rule is that contracts for the sale of goods, wares, merchandise, or other personal chattels, are executory and continuing in character, and provisions with regard to performance are in a sense mutual and dependent. One of such provisions is the express or implied undertaking that the

subject-matter of the contract shall be paid for in instalments, the payments to be made with reference to the time of delivery. Where payment is thus expressly or impliedly contracted for, payment at the time agreed upon is generally considered to be a material element of the contract, and the failure of the buyer to comply with the contract in this regard is held to relieve the seller of the obligation to make further deliveries; at least, while the buyer is in default, and where payment is unjustifiably or persistently refused by the buyer, or he is so negligent in the matter as to indicate his intention not to comply strictly with the contract in this regard, the seller is entitled to regard the attitude of the buyer as in effect a repudiation of the contract by him, and he may rescind the contract. 14 A. L. R. 1210.

The two theories frequently invoked as the basis for justifying the seller's treatment of the contract as discharged are: (1) The buyer's substantial default, and (2) his renunciation or abandonment of the contract. A material and substantial default on the part of the buyer in making a payment operates as such a breach of the entire contract that it discharges the seller at his election from further performance. 5 Page, Contracts, p. 5323, § 3011. Under different situations, different tests of what constitutes a material and substantial default may be used. That which under one set of circumstances may be considered too trivial to justify rescission, under other circumstances may be held to be so material as to prevent substantial performance. *Dudley v. Wye,* 230 Mass. 350, 119 N. E. 790.

Under the rule followed in Wisconsin, both before and after the adoption of sec. 121.45 (2), Stats., the question of whether default on the part of the buyer in making payments under an instalment contract operates as a discharge of the contract or not, is regarded as a question of fact to be determined from the evidence as a whole in each particular case. *Campbell & Cameron Co. v. Weisse,* 121 Wis. 491, 99 N. W. 340; *Kieckhefer Box Co. v. John Strange Paper*

*Co.* 180 Wis. 367, 189 N. W. 145, 193 N. W. 487, 196 N. W. 572; *Greer v. Oelhafen,* 180 Wis. 131, 192 N. W. 467; *Wilbur v. Means,* 171 Wis. 401, 177 N. W. 575; *Crocker Chair Co. v. Edward Hines H. & H. Co.* 201 Wis. 415, 230 N. W. 61; *Chess & Wymond Co. v. La Crosse Box Co.* 173 Wis. 382, 181 N. W. 313; 5 Page, Contracts, p. 5323, § 3011.

The second theory of justification for rescission by the seller is that failure on the part of the buyer to perform his part of the contract, that is, payment in full for goods already delivered, constitutes abandonment or repudiation of the contract by the buyer which relieves the seller from the duty of making any further deliveries. In this situation it is not always necessary that the breach by the buyer be substantial in effect. The determining question is whether the buyer was refusing to live up to the terms of the contract, whether he is in effect making a new contract. The courts will not force upon the parties contractual obligations into which they have not entered voluntarily. Thus, in such cases it is the intention of the party, not the extent of his default, which is all-important. *Murphy v. Sagola Lumber Co.* 125 Wis. 363, 103 N. W. 1113; *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270; *Genesee Fruit Co. v. Barrett,* 67 Ill. App 673; *Quarton v. American Law Book Co.* 143 Iowa, 517, 121 N. W. 1009, 32 L. R. A. (N. S.) 1; 29 Law Quarterly Review, 61, 75; 5 Page, Contracts, p. 5326, § 3013.

Where the question is one of renunciation, not one of materiality of breach, it becomes, even under the Uniform Sales Act, a question of law, not of fact. On this point, this court, in the case of *Chess & Wymond Co. v. La Crosse Box Co., supra,* said:

"In this case we are not dealing with the mere inadvertence of the buyer to make payment for an instalment nor with a situation where payment is delayed by reason of some controversy as to quantity or quality, but with a straight-

out refusal to pay in accordance with the terms of the contract. This, as was held in *Ambler v. Sinaiko, supra,* constitutes, as a matter of law, a breach of the contract. This is true both under the Uniform Sales Act and under the law as it stood prior to the passage of that act. While in a particular case, whether the breach by reason of the failure to deliver an instalment or to accept and pay for it is a material breach or not is generally a question for the jury (*E. I. Dupont de Nemours P. Co. v. United Z. & C. Co.* 85 N. J. Law, 416, 89 Atl. 992), where the conduct of the buyer amounts to a renunciation of the contract the seller may elect to treat it as a breach."

In the present case, the trial court, although its language is rather general, reached the conclusion that respondent's failure to pay the one dollar did not constitute a material breach of the contract. On the evidence presented we find no reason whatever for disturbing that holding. As to the question of respondent's failure to abide by the terms of his contract, there is nothing whatever, outside of appellant's statement in the letter to respondent's attorney above quoted, which statement is not supported by evidence, to show that respondent was not acting in good faith when he paid one dollar less than appellant claimed was due. He was not attempting to impose new terms or to avoid performance of his part of the contract. In such a situation, in view of the good faith of the buyer, the insignificance of his breach, if in fact he was guilty of a breach at all, and the ease with which the appellant, once his right to the additional one dollar was established, could have been compensated, the actions of the respondent cannot be held to have given to the appellant the right to declare the contract at an end. *Taussig v. Southern Mill & Land Co.* 124 Mo. App. 209, 101 S. W. 602.

*By the Court.*—Judgment affirmed.